LEHAN, Judge.
Defendant, David Rabren, appeals a final judgment against him in an action by Gulf Towing Company, Inc., for intentional interference with contract or business relationships. We reverse.
Rabren is a licensed harbor pilot. Gulf Towing was the owner of a tug called “Tampa,” which was used to assist large ships in docking and undocking. The record reflects that the assistance of a pilot while docking and undocking in Tampa is not mandatory. The ship’s master decides whether he or the pilot will direct docking or undocking. The decision of whether to use a tug during docking and undocking is also made by the ship’s master, although pilots can and do commonly make recommendations to masters in that regard.
After about June 5, 1980, Rabren apparently decided to try to avoid using the tug “Tampa” to dock or undock any ship on which he was the pilot. There is evidence in the record which would at least support the conclusion that Rabren’s reasons were *341 less related to the condition of the tug or the abilities of its personnel than to the fact that on June 5, 1980, Gulf Towing was granted a large judgment against another harbor pilot and a ship in a lawsuit arising out of an accident in which “Tampa” had been sunk. There was some testimony that Rabren apparently believed that a pilot should not be held liable for this type of accident.
Although Rabren had used the tug “Tampa” on 23 occasions between February and June 1980, after June 5, 1980, “Tampa” did not work on any job acquired by Gulf Towing when Rabren was the pilot. Gulf Towing then filed this lawsuit for tortious interference by Rabren with Gulf Towing’s contractual or business relationships. After a nonjury trial, the court awarded an injunction and $20,931.73 damages to Gulf Towing, finding that Rabren, without' privilege, had interfered with the business relationships of Gulf Towing.
There are a number of elements necessary to prove the tort of interference with a business relationship, but we need deal here with only one, that the alleged interference must be by someone who is a third party to the business relationship. Ethyl Corp. v. Balter, 386 So.2d 1220 (Fla. 3d DCA 1980); Berenson v. World Jai-Alai, Inc., 374 So.2d 35, 40 (Fla. 3d DCA 1979); Paradise Shores Apartments, Inc. v. Practical Maintenance Go., Inc., 344 So.2d 299, 301 (Fla. 2d DCA 1977).
To determine the legal relationship of a pilot to a ship, its master, or its owner, we have been cited to Homer Ramsdell Transportation Co. v. Compagnie Generale Transatlantique, 182 U.S. 406, 21 S.Ct. 831, 45 L.Ed. 1155 (1901), which says that a pilot in certain circumstances may be considered an employee of the ship’s master if the pilotage is not compulsory. The parties here agree that the pilotage involved in this case was not compulsory. Therefore, under the theory of Homer Ramsdell, the pilot could be considered an employee of the ship’s master.
In any event, there is no dispute that the pilot’s duties include advising the master as to the use of tugs for docking or undocking. Accordingly, the pilot could not be said to be a disinterested third party to the business relationship between the ship and the tug. This situation is similar to that in Buckner v. Lower Florida Keys Hospital, 403 So.2d 1025 (Fla. 3d DCA 1981), where the trial court’s dismissal of a complaint for wrongful interference with a business relationship was affirmed. The defendants in Buckner, who comprised the hospital’s medical staff, administration, and boards, were accused of interfering with plaintiff-doctor’s profession by terminating and failing to renew his status as a hospital staff member. The Third District in Buckner observed that:
Much like a corporation, which must act through its officers, directors, and employees, ... so must a hospital. In the instant ease, it was alleged that the “defendants,” all of whom make up the hospital’s medical staff, administration, and boards, conspired to interfere with Dr. Buckner’s profession. None of the individuals could make the ultimate decision to grant or deny staff privileges to a doctor. Such a determination can only be made by the hospital through a composite of these defendants acting in their various hospital capacities. Since the combined efforts of the defendants were required to render any decision on staff privileges, there was no interference by “third parties” when staff privileges were denied by them as a group.
403 So.2d at 1028 (citations omitted). Somewhat like the defendants in Buckner, Rabren was shown to be acting, under established procedures for pilots, in an advisory relationship to the masters of ships relative to the hiring of tugs. Therefore, under Florida law the defendant cannot be liable for the tort alleged under the facts of this case. See also Muller v. Stromberg Carlson Corp., 427 So.2d 266 (Fla. 2d DCA 1983), where we affirmed the dismissal of a similar type of complaint against a corporate officer who was accused of maliciously in *342 terfering with a corporate employee’s business relationship with the corporation.
REVERSED AND REMANDED FOR ENTRY OF JUDGMENT IN FAVOR OF APPELLANT.
BOARDMAN, A.C.J., and SCHOON-OVER, J., concur.