**James R. PETERSON and Brenda Peterson, Appellants,**

v.

**UNITED ACCOUNTS, INC., Appellee.**

**No. 80–1303.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1980.

Decided Jan. 22, 1981.

John J. Fox, Bismarck, N.D., for appellants.

Max D. Rosenberg, Bismarck, N.D., for appellee.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

ROSS, Circuit Judge.

James and Brenda Peterson appeal from an order of the district court dismissing their claim against United Accounts, Inc. for alleged violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. The district court[1] dismissed the Petersons' FDCPA claim because it had not been asserted as a compulsory counterclaim in a pending state claim brought by United Accounts, Inc. to collect the underlying debt in North Dakota. We reverse the dismissal and reinstate the complaint on grounds that the claim asserted under the FDCPA is a permissive, rather than a compulsory counterclaim.

This controversy arose as a result of a debt allegedly incurred by James and Brenda Peterson for medical treatment at St. Alexius Hospital and Quain & Ramstad Clinic. United Accounts, Inc., a debt collection agency and assignee of the creditors' claims, filed suit against the Petersons in state court in June of 1979 to collect these debts.[2] In July of 1979, while the collection action was pending in state court, the Petersons filed the instant claim in federal court. They alleged that: (1) United Accounts had failed to send written notice as required by 15 U.S.C. § 1692g; and (2) United Accounts had used unfair means to collect an amount not permitted by law, in violation of 15 U.S.C. § 1692f(1) of the FDCPA.

The district court dismissed the federal action on February 6, 1980,[3] finding that the claim should have been raised as a compulsory counterclaim in the pending state proceeding. On appeal, the question is whether a cause of action brought to vindicate alleged violations of the FDCPA must be brought as a compulsory counterclaim to a claim pending in state court for the collection of the underlying debt.

North Dakota Rule of Civil Procedure 13(a), like its federal counterpart, Fed.R. Civ.P. 13(a), provides:[4]

Compulsory counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it *arises out of the transaction or occurrence that is the subject matter* of the opposing party's claim * * *.

(Emphasis added.) Jurisdiction in the federal district court is based on 15 U.S.C. § 1692k(d) of the FDCPA, which provides for concurrent state-federal jurisdiction:

An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

We agree with the district court that Burleigh County District Court of the State

---

1. The Honorable Bruce M. Van Sickle, Judge of the United States District Court for the District of North Dakota.

2. In this answer to the state complaint, the Petersons raised defenses under the Hospital Survey and Construction (Hill-Burton) Act of 1946, 42 U.S.C. § 291 et seq. and under the usury laws of North Dakota. They also filed a counterclaim alleging a violation of the disclosure provisions of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq.

3. The district court dismissed the action without prejudice to any right of the Petersons to amend their state court pleadings to assert the FDCPA claim as a compulsory counterclaim.

4. The North Dakota rule is construed *in pari materia* with Fed.R.Civ.P. 13(a). *See, e. g., Leo Lumber Co. v. Williams*, 191 N.W.2d 573, 576–77 (N.D.1971) (applying federal decisions to construe the state rule).

of North Dakota, the court before which the state cause of action is pending, is a court of competent jurisdiction under this provision of the FDCPA. Hence, the FDCPA claim *may* be heard before that state court. However, we disagree with the district court that the counterclaim must be characterized as compulsory, which would, in many cases, effectively preclude federal jurisdiction.

The attention of this court has not been addressed to any case deciding whether an FDCPA action is a compulsory counterclaim to a debt collection action. Several courts have, however, considered whether a counterclaim for the underlying debt is compulsory in actions brought under the Truth in Lending Act (TILA), 15 U.S.C. § 1640.

The Fourth Circuit, in *Whigham v. Beneficial Finance Co.*, 599 F.2d 1322, 1323–24 (4th Cir. 1979), concluded that

> a lender's claim for debt against a borrower who sues for violation of the Truth-in-Lending Act has none of the characteristics associated with a compulsory counterclaim. * * * The lender's counterclaim raises issues of fact and law significantly different from those presented by the borrower's claim.

(Footnote omitted.) The logical relationship [5] between the debt action and the truth in lending action were considered too attenuated to require compulsory adjudication in a single lawsuit. While the state debt claim involved a private loan contract governed by state law, "[t]he borrower's federal claim involves the same loan, but it does not arise from the obligations created by the contractual transaction. * * * Instead, the claim invokes a statutory penalty designed to enforce federal policy against inadequate disclosure by lenders." *Id.* at 1324. This analysis applies with even more force to the FDCPA situation, in which the federal claim involves not the loan itself, but the use of unfair methods to collect it.

The Seventh Circuit, in *Valencia v. Anderson Bros. Ford*, 617 F.2d 1278, 1290–92 (7th Cir.), *cert. granted*, as to unrelated issues, —— U.S. ——, 101 S.Ct. 395, 66 L.Ed.2d 242 (1980), also concluded that a debt counterclaim to a TILA claim is permissive.[6] The court in *Valencia* reasoned that

> [t]he sole connection between a TILA claim and a debt counterclaim is the initial execution of the loan document. A flexible application of the logical relationship test reveals that this connection is so insignificant that compulsory adjudication of both claims in a single lawsuit will secure few, if any, of the advantages envisioned in Rule 13(a). * * *

The TILA claim and that counterclaim raise different legal and factual issues governed by different bodies of law. A TILA suit for inadequate disclosure, such as the instant case, can often be resolved by an examination of the face of the loan document. A debt counterclaim, on the other hand, can raise the full range of state law contract issues. The two claims do not, * * * spring from the same "aggregate of operative facts." * * *

---

**5.** The Supreme Court of North Dakota has adopted the logical relationship test to determine whether the claim and counterclaim arise from the same transaction or occurrence for the purposes of Rule 13(a). *Leo Lumber Co. v. Williams*, 191 N.W.2d 573, 576–77 (N.D.1971). This court in *Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254, 264 (8th Cir.), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979), set forth the following test for determining whether the claim arises out of the same transaction or occurrence:

1) Are the issues of fact and law raised by the claim and counterclaim largely the same?
2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?
3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?
4) Is there any logical relation between the claim and the counterclaim?

These tests were adopted from 6 Wright & Miller, Federal Practice and Procedure § 1410 p. 42.

**6.** Rule 13(b), N.D.R.Civ.P., relating to permissive counterclaims, provides as follows:

Permissive counterclaims. A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

The rights and obligations of the parties with respect to the two claims hinge on different facts and different legal principles.

*Id.* at 1291–92 (footnote and citations omitted).

Of the courts of appeal to consider the issue, only the Fifth Circuit has espoused the view that such counterclaims are compulsory. In *Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357, 1360–63 (5th Cir. 1979), the court reasoned that a debt counterclaim was logically related to a TILA claim, as both derived from a common factual basis.

We believe the better approach is that taken by the Fourth and Seventh Circuits, and the majority of the district courts to have considered the issue.[7] These courts have ruled a debt counterclaim to a TILA claim to be permissive.

In our view, the goals of Rule 13[8] and the purpose of the FDCPA[9] can best be effectuated by holding the counterclaim involved in this case permissive, rendering it cognizable in either the state or federal court.

In the instant case, the circumstances giving rise to the original debt are separate and distinct from the collection activities undertaken by United Accounts, Inc. While the debt claim and the FDCPA counterclaim raised here may, in a technical sense, arise from the same loan transaction, the two claims bear no logical relation to one another. Although there is some overlap of issues raised in both cases as a result of the defenses raised in the state action, the suit on the debt brought in state court is not logically related to the federal action initiated to enforce federal policy regulating the practices for the collection of such debts.

In this case, the district court remanded the case to the state court on the grounds that it was a compulsory counterclaim. While the counterclaim is permissive, not compulsory, we believe it would be proper for the district court to stay proceedings and direct that appellants proceed to file their action as a permissive counterclaim in state court. If the state court does not accept jurisdiction over the subject matter asserted in the federal complaint, or does not decide the issues which are the subject matter of this complaint, the federal court may then proceed to decide the issues.

Reversed and remanded.

---

7.  *See* cases cited in *Whigham v. Beneficial Finance Co.,* 599 F.2d 1322, 1323–24 n.* (4th Cir. 1979), and *Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357, 1361, 1363 nn.10, 11 (5th Cir. 1979).

8.  Rule 13(a) of the Federal Rules of Civil Procedure was designed to prevent a multiplicity of actions and a duplication of judicial efforts.

9.  The purpose of the Fair Debt Collection Practices Act includes the elimination of abusive debt collection practices by debt collectors, insuring that those debt collectors who refrain from using abusive practices are not competitively disadvantaged, and the promotion of consistent state action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(E).